1

2

3

4

5

6

7

8                                        UNITED STATES DISTRICT COURT

9                                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JAY FLEMING,                                       No. 2:13-cv-01720-KJM-EFB

12                        Plaintiff,

13            v.
                                                         ORDER
14    PURCELL PAINTING AND
      COATINGS SOUTHWEST, INC., a
15    Washington Corporation doing Business
      in the State of California as PURCELL
16    P&C, LLC;  et al.,

17                        Defendants.

18

19                 Defendant Purcell Painting and Coatings Southwest moves for summary judgment.

20    (Def.'s Corrected Mot. Summ. J., ECF No. 29.)  Plaintiff Jay Fleming opposes the motion.  (Pl.'s

21    Opp'n to Def.'s Mot., ECF No. 39.)  On October 10, 2014, the court heard arguments on the

22    motion for summary judgment.  Robin Perkins appeared for plaintiff Fleming, and Paul Dayton

23    appeared for defendant Purcell Painting.  After considering the parties' arguments and

24    supplemental authority disclosed by defendant, the court grants the motion in part and denies it in

25    part.

26                 In the sections below, when the parties agree a fact is undisputed, the court refers

27    to their agreement rather than to the portions of the record supporting the agreement.  When the

28    facts are disputed, the court notes the disagreement and cites to the supporting record.  The court

1  cites only relevant evidence and does not resolve objections unless necessary.  Any objections to

2  evidence cited here are overruled; several objections are addressed separately below.

3  I.  EVIDENTIARY OBJECTIONS

4  A court may consider evidence on summary judgment as long as it is "admissible

5  at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).  Admissibility depends not on

6  the evidence's form, but on its content.  *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir.

7  2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  The party seeking admission

8  of evidence "bears the burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d

9  999, 1004 (9th Cir. 2002).  If the opposing party objects to the proposed evidence, the party

10  seeking admission must direct the court to "authenticating documents, deposition testimony

11  bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under

12  which the evidence in question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*,

13  627 F.3d 376, 385–86 (9th Cir. 2010).  However, courts are sometimes "much more lenient" with

14  the affidavits and documents of the party opposing summary judgment.  *Scharf v. U.S. Atty. Gen.*,

15  597 F.2d 1240, 1243 (9th Cir. 1979).

16  The court addresses four objections in detail.  First, Fleming objects to the

17  February 10, 2012, email from Fleming to Dave Purcell thanking Purcell for his support during

18  Fleming's removal from the Three Bridges Project.  (Dayton Decl. Ex. M, ECF No. 31-1.)  He

19  contends the email is hearsay, lacks foundation, was made without personal knowledge, and calls

20  for a legal conclusion.  The court overrules the objection.  "[E]mails written by a party are

21  admissions of a party opponent and admissible as non-hearsay under Fed. R. Evid. 801(d)(2)." *In*

22  *re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 769, 781 (C.D. Cal. 2004).  A review of the

23  undisputed facts and the email's contents shows it was made with Fleming's personal knowledge

24  and calls for no legal conclusions.

25  Second, Fleming objects to the April 10, 2012 email from Ben Bear to Dave

26  Purcell confirming Purcell's assessment that Fleming was a "bright young man" and deserved a

27  raise.  (Purcell Decl. Ex. B, ECF No. 22.)  He contends the statement is hearsay and lacking in

28  personal knowledge and foundation.  The court overrules this objection because Dave Purcell's

2

statements are not offered for their truth, but as evidence of his belief regarding Fleming's professional performance.  *Wagner v. Cnty. of Maricopa*, 747 F.3d 1048, 1053 (9th Cir. 2013) ("The [hearsay] bar applies only when the statements are offered to prove the truth of the fact underlying the memory or belief.").  Neither does a review of the record or the email suggest any lack of foundation or personal knowledge.

Third, Fleming objects to the October 5, 2012, email from Purcell Painting's CFO to its attorney, asking the attorney about terminating the Vancouver office lease.  (Dayton Decl. Ex. T, ECF No. 31-1.)  Fleming contends the statement is hearsay and irrelevant.  The email includes several parts.  First, its subject line reads "HELP! Just signed a lease for Vancouver this week, executed it, and Ben just quit."  The body includes two sentences: first "Dave now wants to shut down that office," and second, "Any ideas how to approach the property management company?"  The email is not admissible to show what Dave Purcell had said on a particular date, but is admissible to show the declarant's excitement and the nature of any emergency under the "well-known exception to the hearsay exclusionary rule."  *United States v. Hills*, 455 F.2d 504, 505 (9th Cir. 1972) (per curiam).  *See also Yang v. Mendoza-Powers*, No. 05-417, 2009 WL 257036, at *3 (E.D. Cal. Feb. 4, 2009) (applying Fed. R. Evid. 803(2) to a written statement), *report and recommendation adopted sub nom. Bee Yang v. Mendoza-Powers*, No. 05-417, 2009 WL 1156460 (E.D. Cal. Apr. 29, 2009).  The email is admissible evidence of the declarant's "state of mind," and an "intent, or plan" to escape a lease on a particular date.  Fed. R. Evid. 801(1), (3).  The email also is admissible to show Purcell Painting personnel formed the intent to avoid continuing the lease on October 5, 2012, their reaction to learning the office would be closed, and the circumstances driving that reaction.  *Id.*  It is relevant to show whether Purcell Painting intended to close the office to retaliate against Fleming or based on a legitimate intent.

Fourth, Purcell Painting objects to Fleming's statement that Bill Carver told them Dave Purcell was "pissed" and was closing the Vancouver office because Fleming was suing Dave Purcell.  (Perkins Decl. Ex. A, Fleming Dep. 144:13–146:12, ECF No. 41.)  Purcell Painting argues the statement is inadmissible hearsay.  The statement is an example of hearsay within hearsay.  *See* Fed. R. Evid. 805.  At the first layer, Dave Purcell's statement to Bill Carver

1   is the statement of a party opponent and excluded from the hearsay rule.  Fed. R. Evid. 801(d)(2).

2   But at the second layer, Carver's statement to Fleming that Dave Purcell was "pissed" and closing

3   the office in retaliation for Fleming's lawsuit does not fall within an exception or exclusion.  The

4   words were offered out of court, and to be relevant, must be offered to show Dave Purcell was

5   actually "pissed" and would truly close the Vancouver office in retaliation for the lawsuit.  Rule

6   803(3) does not except the statement because it did not describe the mental state of the declarant,

7   Bill Carver, but rather that of Dave Purcell.  Finally, Rule 801(d)(2) does not except the statement

8   as that of a party opponent.  Carver was a Purcell Painting employee, but an employee's

9   statement must have been made "by a person whom the party authorized to make a statement on

10  the subject," Fed. R. Evid. 801(d)(2)(C), or "by [Purcell Painting's] . . . employee on a matter

11  within the scope of that relationship and while it existed," Fed. Evid R. 801(d)(2)(D).

12          Fleming, the statement's proponent, bears the burden to show its admissibility.

13  *Pfingston*, 284 F.3d at 1004.  Fleming testified in his deposition that Carver gave him

14  "notification," on a Sunday, that Purcell Painting would close the Vancouver office.  (Perkins

15  Decl. Ex. A, Fleming Dep. 145:19–24, ECF No. 41.)  Fleming testified, "Bill Carver told me that

16  Dave was pissed at me and just going to run everything out of the Tukwila office.  And he was

17  pissed at me because I was suing him and that he was coming down to close the office on

18  Monday morning."  (*Id.* at 146:2–6.)  These facts are insufficient to show Carver had Purcell

19  Painting's authorization to make the statement, made it on behalf of Purcell Painting, or made it

20  in his capacity as an employee and supervisor, and Fleming has made no argument to satisfy his

21  burden that this exclusion may apply.  *See Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314

22  (10th Cir. 2005) ("In order for a statement to qualify as an admission of a party opponent, the

23  speaker 'must be involved in the decisionmaking process affecting the employment action

24  involved.'" (quoting *Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 762 (7th Cir. 2003)));

25  *Pfingston*, 284 F.3d at 1004 (excluding a statement as outside the scope of Rule 801(d)(2)(D)

26  because the proponent had not provided evidence the declarant's job duties had anything to do

27  with the statement in question); *Harris v. Itzhaki*, 183 F.3d 1043, 1054 (9th Cir. 1999) ("Federal

28  Rule of Evidence . . . 801(d)(2)(D) requires the proffering party to lay a foundation to show that

4

1    an otherwise excludable statement relates to a matter within the scope of the agent's

2    employment."); 5 Weinstein's Fed. Evid. § 801.33[2][c] (2d ed.) ("In [cases of employment

3    discrimination] many courts have held that the declarant must be among the persons who made

4    the employment decisions in question . . . ."). Because Fleming has the burden to show the

5    statement is admissible, and he has not, the objection is sustained.

6    II.    FACTUAL RECORD

7                  Purcell Painting hired Jay Fleming in July 2011 to work as a project site manager

8    cleaning and painting three bridges in California (the Three Bridges Project). (Def.'s Resp. to

9    Pl.'s Separate Statement of Material Facts at 2 ¶ 2, ECF No. 37.) Purcell Painting, in turn, had

10   been hired as a subcontractor by Santa Margarita Construction Corporation (SMCC), the general

11   contractor for CalTrans. (*Id.* at 2 ¶ 3.) On January 27, 2012, Fleming received written

12   complaints from two Purcell Painting employees, who objected to racially discriminatory remarks

13   made by the SMCC Vice President of Operation, John Brukiewicz. (Pl.'s Opp'n to Def.'s

14   Separate Statement of Material Facts ¶ 17, ECF No. 42.) Fleming immediately passed these

15   complaints to his supervisor at Purcell Painting, Ben Bear, and to a CalTrans employee, Bill

16   Brooks. (Def.'s Resp. to Pl.'s Separate Statement of Material Facts at 4 ¶ 8, ECF No. 37.) The

17   parties dispute the significance of Fleming's delivery of these complaints to CalTrans. (*Id.*; Pl.'s

18   Opp'n to Def.'s Separate Statement of Material Facts ¶ 20, ECF No. 42.)

19                  On January 28, 2012, SMCC issued notice of several contract violations and

20   invoked a clause in its contract with Purcell Painting to remove Fleming from the job site. (Def.'s

21   Resp. to Pl.'s Separate Statement of Material Facts at 4 ¶ 11, ECF No. 37.) That same day,

22   Fleming emailed Dave Purcell, president of Purcell Painting, describing discrepancies in SMCC's

23   alleged violations. (*Id.* at 5 ¶ 13.) Dave Purcell sent a letter to SMCC requesting Fleming stay on

24   the job site and describing SMCC's actions as retaliatory. (Pl.'s Opp'n to Def.'s Separate

25   Statement of Material Facts ¶ 31, ECF No. 42; Dayton Decl. Ex. K, at 1, ECF No. 31-1). On

26   February 1, Fleming emailed Ben Bear, suggesting he be transferred to Purcell Painting's

27   Vancouver office, where he could manage the Three Bridges Project remotely. (Dayton Decl. Ex.

28   A, Fleming Dep. at 108:19–109:3, ECF No. 31.) The parties dispute whether Fleming's move to

1  Vancouver cost him wages he would have earned if he had stayed on the Three Bridges jobsite.

2  (Def.'s Resp. to Pl.'s Separate Statement of Material Facts at 6 ¶ 19, ECF No. 37; Pl.'s Opp'n to

3  Def.'s Separate Statement of Material Facts ¶¶ 39, 42, ECF No. 42.)

4          On February 10, 2012, Fleming sent an email to Dave Purcell thanking Purcell for

5  his support during Fleming's removal from the Three Bridges Project.  (Dayton Decl. Ex. M, ECF

6  No. 31-1.)  After two months of Fleming's managing the Three Bridges Project from Vancouver,

7  Purcell praised Fleming's work and agreed to give Fleming a raise and a bonus if the project were

8  completed below budget.  (Purcell Decl. Ex. B, ECF No. 32.)  Nevertheless, as the project

9  continued, the tenor of Fleming and Dave Purcell's relationship "completely declined."  (Def.'s

10  Resp. to Pl.'s Separate Statement of Material Facts at 6 ¶ 20, ECF No. 37.)  On August 8, 2012,

11  Dave Purcell called Fleming, said that he was tired of Fleming's excuses, and demanded Fleming

12  stop complaining about his removal from the California jobsite.  (*Id.* at 7 ¶¶ 21, 22; Perkins Decl.,

13  ECF No. 41 at 44 (unmarked exhibits).)

14          On October 4, 2012, Fleming mailed a demand letter to Dave Purcell, outlining

15  various employment claims against Purcell Painting.  (Def.'s Resp. to Pl.'s Separate Statement of

16  Material Facts at 7 ¶ 23, ECF No. 37.)  On October 5, Ben Bear, the Vancouver Office Manager,

17  submitted his resignation notice and Purcell Painting began exploring options for closing the

18  Vancouver office.  (Moynan Decl. Ex. C, ECF No. 36; Dayton Decl. Ex. T, ECF No. 31-1.)

19  Fleming's attorney agreed at the hearing on this motion that Fleming's October 4, 2012 letter

20  could not have reached Dave Purcell before October 5.  On November 5, 2012, Purcell Painting

21  closed its Vancouver office and terminated Fleming.  (Pl.'s Opp'n to Def.'s Separate Statement of

22  Material Facts ¶ 50, ECF No. 42.)

23          Fleming filed a complaint in this court on August 20, 2013, alleging violations of

24  section 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e-3(a) (Title VII), the

25  California Fair Employment and Housing Act, Cal. Gov't Code § 12940(h) (FEHA), and

26  California Labor Code section 1102.5 (section 1102.5).  (Pl.'s Compl. ¶¶ 22, 27, 34, ECF No. 1.)

27  Fleming also alleged wrongful termination in violation of public policy and intentional infliction

28  of emotional distress.  (*Id.* ¶¶ 39, 45.)  He has exhausted all administrative remedies with the

1   California Department of Fair Housing and Employment and the Equal Employment Opportunity

2   Commission.  (*Id.* ¶¶ 19, 20.)  Purcell Painting filed this corrected motion for summary judgment

3   on September 5, 2014.  (ECF No. 29.)  Fleming responded on September 29, 2014 (ECF No. 39),

4   and Purcell Painting replied on October 3, 2014 (ECF No. 46).

5   III.   STANDARD

6           A court will grant summary judgment "if . . . there is no genuine dispute as to any

7   material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

8   The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

9   resolved only by a finder of fact because they may reasonably be resolved in favor of either

10  party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

11          The moving party bears the initial burden of showing the district court "that there

12  is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*,

13  477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish

14  that there is a genuine issue of material fact . . . ."  *Matsushita Elec. Indus. Co. v. Zenith Radio

15  Corp.*, 475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to particular

16  parts of materials in the record . . . ; or show [] that the materials cited do not establish the

17  absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

18  evidence to support the fact."  Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586

19  ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as

20  to the material facts").  Moreover, "the requirement is that there be no *genuine* issue of *material*

21  fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing

22  law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 247–48

23  (emphasis in original).

24          In deciding a motion for summary judgment, the court draws all inferences and

25  views all evidence in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at

26  587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).  "Where the record taken as a

27  whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

28  /////

1    issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv.*

2    *Co.*, 391 U.S. 253, 289 (1968)).

3    IV.    <u>DISCUSSION</u>

4       A.    <u>Title VII</u>

5        Under Title VII, an employer may not discriminate against any individual because

6    "he has opposed any practice made an unlawful employment practice by this subchapter, or

7    because he has . . . participated in any manner in an investigation, proceeding, or hearing under

8    this subchapter." 42 U.S.C § 2000e-3(a). To establish a prima facie claim for retaliation under

9    Title VII, a plaintiff must show (1) the employee engaged in a protected activity, (2) the employer

10    subjected the employee to an adverse action, and (3) a causal link exists between the protected

11    activity and the employer's action. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir.

12    2004). If a prima facie retaliation claim is established, the "burden shifting" scheme described in

13    *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies. *Stegall v. Citadel Broad. Co.*,

14    350 F.3d 1061, 1066 (9th Cir. 2003), *as amended* (Jan. 6, 2004). "[T]he requisite degree of proof

15    necessary to establish a prima facie case for Title VII . . . claims on summary judgment is

16    minimal." *Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1094 (9th Cir. 2005) (internal

17    quotations omitted).

18        Under *McDonnell Douglas*, once the plaintiff makes out a prima facie case of

19    retaliation, "the burden shifts to [the defendant] to articulate a legitimate, non-discriminatory

20    reason for the adverse employment action." *Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 800

21    (9th Cir. 2003). If the defendant articulates such a reason, the plaintiff "bears the ultimate burden

22    of demonstrating that the reason was merely a pretext for a discriminatory motive." *Stegall*,

23    350 F.3d at 1066. If there is no direct evidence of discrimination, the plaintiff "must proffer

24    'specific' and 'substantial' evidence of pretext" to overcome a summary judgment motion. *Id.*

25        Fleming essentially alleges three theories of retaliation under Title VII: first, his

26    reporting the SMCC conduct in January, followed by his immediate removal from the jobsite at

27    SMCC's direction; second, his reporting SMCC's discriminatory conduct in January, followed by

28    his termination by Purcell in late 2012; and third, his demand letter to Purcell in October,

followed by Purcell Painting's decision to close the Vancouver office and terminate him.  The court first considers, for each theory of retaliation, the three parts of a prima facie case: a protected activity, adverse action, and causation.  Then the court determines whether Purcell Painting has presented a legitimate, nondiscriminatory reason for the alleged adverse action, and if so, whether that legitimate reason is mere pretext.

### 1. Protected Activity

As a preliminary matter, Fleming did not engage in protected activity under the participation clause of Title VII.  *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has . . . participated in any manner in an investigation, proceeding, or hearing under this subchapter.").  The purpose of that clause is to protect employees who "utilize[] the tools provided by Congress to protect [their] rights."  *Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990).  Accordingly, conduct under the participation clause is only protected if the conduct is part of a Title VII proceeding, such as an Equal Employment Opportunity Commission hearing.  *Id.*  Although Fleming urges the court to interpret the participation clause broadly (Pl.'s Opp'n to Def.'s Mot. at 7, ECF No. 39), there is no evidence that a proceeding under Title VII occurred or that the plaintiff participated in such a proceeding.

Beyond the participation clause, under Title VII, an employee engages in protected conduct when he or she opposes an unlawful employment practice of his or her employer.  42 U.S.C § 2000e-3(a).  Opposition must be toward an employer, not a third party.  *Folkerson v. Circus Circus Enters.*, 107 F.3d 754, 755 (9th Cir. 1997).  Opposition carries its ordinary meaning, "to resist or antagonize . . .  to contend against; to confront; resist; withstand."  *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276, (2009) (alteration in original) (internal quotation marks and citations omitted).  Informal complaints to an employer constitute a protected activity under Title VII.  *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 506 (9th Cir. 2000).  Two actions may be protected activity here.  First, on January 27, 2012, Fleming reported the discriminatory conduct of an SMCC employee to

/////

1    CalTrans (Pl.'s Opp'n to Def.'s Mot. at 8, ECF No. 39), and second, in October 2012, Fleming

2    sent a demand letter to Dave Purcell (*id.* at 8-9).  The court considers each possibility in turn.

3                              a)        Protected Activity in January

4                  The first element of a Title VII prima facie case requires essentially a dual

5    showing: first, that the employee "opposed" conduct; and second, that the discriminatory conduct

6    opposed was the employer's or could be imputed to it.  *See Folkerson*, 107 F.3d at 755.  As

7    described above, "opposition" means "to resist . . . to contend against; to confront."  *Crawford*,

8    555 U.S. at 276.  It is undisputed that Fleming received complaints from two Purcell Painting

9    employees and delivered them to CalTrans in January.  (Pl.'s Opp'n to Def.'s Separate Statement

10   of Material Facts ¶ 17, ECF No. 42.)  The parties dispute the significance of this act under Title

11   VII and whether it would constitute a protected activity.  (Def.'s Resp. to Pl.'s Separate Statement

12   of Material Facts at 4 ¶ 8, ECF No. 37.)  As opposition under Title VII carries its ordinary

13   meaning, a reasonable trier of fact could find Fleming's acts on January 27 constituted

14   opposition.

15                  To be protected, however, Fleming's actions must also have been directed at his

16   employer's unlawful practice.  *Folkerson*, 107 F.3d at 755.  John Bruckewicz was not a Purcell

17   Painting employee, so Purcell Painting did not directly engage in an unlawful employment

18   practice when Bruckewicz made discriminatory remarks.  Under certain circumstances, however,

19   "the discriminatory acts of persons other than the employer will be imputed to the employer

20   constituting an unlawful employment practice of the employer." *Id.*  In order to impute the

21   discriminatory acts to the employer, the employee must show that the employer "ratified or

22   acquiesced" in the discriminatory conduct.  *Id.* at 756.  The employee need only show his or her

23   "reasonable belief" that the employment practice opposed was prohibited under Title VII.  *Trent*

24   *v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994).  Here, Fleming had a reasonable

25   belief that SMCC's conduct violated Title VII.  But to make out a prima facie case, Fleming must

26   also provide evidence to show Purcell Painting ratified or acquiesced in SMCC's harassment.

27   *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978) ("[N]ot every act by an employee in

28   /////

10

opposition to . . . discrimination is protected.  The opposition must be directed at an unlawful

employment practice of an employer, not an act of discrimination by private individual.").

In *Trent*, the Ninth Circuit imputed the discriminatory conduct of a subcontractor

to the plaintiff's employer.  41 F.3d at 527.  The plaintiff's employer brought the subcontractor to

the workplace to teach a safety class, one the employer required the plaintiff to attend.  *Id.* at 525.

The plaintiff complained to her employer, but the employer took no action to remove the plaintiff

from the discriminatory environment.  *Id.*  The Ninth Circuit held it was reasonable for the

plaintiff to believe she would be protected from discrimination while attending the required class

and found she had sufficiently opposed the conduct by reporting it to her employer.  *Id.* at 526.

Recently in *Tamosaitis v. URS Inc.*, the Ninth Circuit has decided the case of an

employee who brought a claim under 42 U.S.C. § 5851(b)(4), a whistleblower provision of the

Energy Reorganization Act.  771 F.3d 539, 543 (9th Cir. 2014).  The employer had contracted

with a third party and the Department of Energy to complete a waste treatment plant at a former

nuclear weapons production facility.  *Id.* at 544.  The employer transferred the plaintiff at the

demand of the third party after plaintiff "brought a fifty-point list of environmental and safety

concerns" to a meeting with the third party and emailed several project consultants about his

concerns.  *Id.* at 544–55.  The employer stipulated the plaintiff had engaged in protected activity

and was retaliated against because of the protected activity.  *Id.* at 552.  The Ninth Circuit cited

*Folkerson* to hold that the employer ratified the third party's retaliation by transferring the

plaintiff.  *Id.* at 554.

Fleming contends he opposed discrimination by reporting the conduct of someone

other than his employer, directed toward other employees, and reported the conduct to someone

other than his employer.  He has not directly argued SMCC's discriminatory conduct should be

imputed to Purcell Painting; rather, he contends that he engaged in a protected activity by

reporting the comments of an SMCC employee to CalTrans, and later to his Purcell Painting

Supervisor.  (Pl.'s Opp'n to Def.'s Mot. at 8, ECF No. 39.)

Despite the absence of a clear argument for imputation in Fleming's briefing, the

court must draw all reasonable inferences in his favor.  *Matsushita*, 475 U.S. at 587–88.  Fleming

11

1    reported that an SMCC employee discriminated against two of his coworkers.  SMCC later

2    demanded Fleming be removed.  Dave Purcell at first protested and suggested SMCC's demand

3    appeared retaliatory, but then removed Fleming nonetheless.  Whether this removal was at

4    Fleming's suggestion and whether SMCC's demand was in fact retaliatory are questions a

5    reasonable trier of fact may resolve in favor of either party.  Summary judgment is not proper.

6         *Folkerson* may plausibly be read to contradict this result.  In *Folkerson*, the Ninth

7    Circuit held the Title VII plaintiff "must show sufficient facts to impute the actions of the [third

8    party] to her employer."  107 F.3d at 756.  It concluded on the record before it that the plaintiff

9    had not met this burden.  *Id.*  Although the plaintiff was terminated, the court did not conclude the

10   adverse act, termination, was sufficient evidence of the employer's ratification or acquiescence.

11   *Id.* at 755–56.  From this holding, one might conclude a plaintiff may not use evidence of an

12   adverse action to meet the requirement of the first element of a Title VII prima facie case,

13   opposition to the employer's action.  But more than the plaintiff's termination was in evidence in

14   *Folkerson*.  There, the casino had taken "reasonable steps to ensure [the plaintiff's] safety from

15   customer harassment," and the plaintiff had responded to the third party's sexual harassment with

16   violence.  *Id.* at 756.  The Ninth Circuit's holding in *Tamosaitis* resolves *Folkerson's* ambiguity.

17   Citing *Folkerson*, the *Tamosaitis* court concluded that a transfer, despite knowledge of a

18   retaliatory motive, supported a reasonable inference that the employer ratified the third party's

19   acts.  771 F.3d at 554.

20        In summary, Fleming has provided sufficient evidence to allow a reasonable

21   inference that Purcell Painting ratified or acquiesced in SMCC's discriminatory conduct, and that

22   he opposed this conduct.

23                   b)      Protected Activity in October

24        Fleming's October 4, 2012 demand letter is a second possible instance of protected

25   activity.  Protected activity includes the informal expression of opposition to alleged unlawful

26   employment practices of the employer including verbal complaints to a supervisor.  *See*

27   *Passantino*, 212 F.3d at 506; *Folkerson*, 107 F.3d at 755.  In his October 4, 2012 demand letter,

28   Fleming outlines his allegations of retaliation and opposes his removal from the jobsite.  (Perkins

12

1     Decl. unmarked exhibits, at 57–59, ECF No. 41.)  No imputation is necessary here because the

2     letter opposes an alleged unlawful employment practice, namely retaliation by termination, by the

3     employer Purcell Painting, rather than a third party's discrimination.  As a result, it is sufficient

4     that Fleming had a reasonable good faith belief in his retaliation claim.  *Trent*, 41 F.3d at 526.

5     Because the letter warns of a possible lawsuit, it constitutes an expression of opposition to

6     defendant's conduct.  Fleming engaged in protected activity by sending the demand letter on

7     October 4.

8                       2.      <u>Adverse Action</u>

9          Fleming presents two possible adverse actions: first, his removal from the jobsite,

10    which allegedly resulted in lost income; and second, termination of his employment.  (Pl.'s Opp'n

11    to Def.'s Mot. at 8–9, ECF No. 39.)  The Ninth Circuit "take[s] an expansive view" of adverse

12    actions under Title VII.  *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000).  "[A]ny adverse

13    treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party

14    or others from engaging in protected activity" is actionable under Title VII.  *Id.* at 1242–43

15    (declining to adopt the more restrictive "materially affects the terms and conditions of

16    employment" standard as preclusive of adverse actions such as retaliatory job references).

17          Fleming contends his removal from the Three Bridges jobsite was an adverse

18    action.  (Pl.'s Opp'n to Def.'s Mot. at 9, ECF No. 39.)  A removal or transfer is an adverse action

19    because other employees could be deterred from reporting similar conduct out of fear of removal

20    and possibly lost wages.  *See Ray*, 217 F.3d at 1242–43 (defining "adverse employment action" to

21    include "lateral transfers, unfavorable job references, and changes in work schedules").  Although

22    Purcell Painting does not dispute Fleming was removed from the Three Bridges job site (Def.'s

23    Resp. to Pl.'s Separate Statement of Material Facts at 6 ¶ 17, ECF No. 37), it does dispute

24    whether Fleming lost any income as a result of moving to Vancouver.  (*Id.* at 12 ¶ 19.)  This

25    disagreement creates a factual dispute the court cannot resolve at this stage.  *Anderson*, 477 U.S.

26    at 250.  The court makes the appropriate inference, in favor of Fleming as the non-moving party,

27    and assumes he suffered an adverse action under Title VII.  *Matsushita*, 475 U.S. at 587–88.

28

1    With respect to the second possible adverse action, Fleming's termination is an

2    "ultimate employment action" constituting an adverse action.  *See Ray*, 217 F.3d at 1242.  Purcell

3    Painting does not dispute that on November 4, 2012 plaintiff was laid off.  (Def.'s Resp. to Pl.'s

4    Separate Statement of Material Facts at 13 ¶ 24, ECF No. 37.)

5    In summary, both Fleming's removal from the jobsite and his termination are

6    adverse employment actions here.

7                3.    Causal Relationship

8    "Title VII retaliation claims must be proved according to traditional principles of

9    but-for causation. . . . This requires proof that the unlawful retaliation would not have occurred in

10   the absence of the alleged wrongful action or actions of the employer."  *Univ. of Texas Sw. Med.*

11   *Cent. v. Nassar*, __ U.S.___, 133 S. Ct. 2517, 2533 (2013).  "Causation sufficient to establish the

12   third element of the prima facie case may be inferred from circumstantial evidence, such as the

13   employer's knowledge that the plaintiff engaged in protected activities and the proximity in time

14   between the protected action and the allegedly retaliatory employment decision."  *Yartzoff v.*

15   *Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).  Although causation is construed broadly at the

16   summary judgment stage, timing alone is not always sufficient.  The adverse action must occur

17   "fairly soon" after the employee's protected expression.  *Villiarimo v. Aloha Island Air, Inc.*, 281

18   F.3d 1054, 1065 (9th Cir. 2002) (holding eighteen months was too long to support an inference of

19   causation).

20   Fleming must describe a causal link between each instance of protected activity

21   and each adverse action.  Here there are two alleged instances of protected activity and two

22   alleged adverse actions.  First, Fleming has established the required causal link between his

23   January 2012 reports and his removal from the California jobsite, but not to his later termination.

24   Second, Fleming has established a sufficient causal link between his demand letter and

25   termination.

26                a)    Causal Links to January Protected Conduct

27   Assuming Fleming engaged in protected activity in January 2012, he must

28   establish a connection to his removal from the California jobsite.  Purcell Painting does not

1   dispute Fleming was removed from the jobsite on or about January 30.  (Def.'s Resp. to Pl.'s

2   Separate Statement of Material Facts at 6 ¶ 17, ECF No. 37.)  This close proximity in time,

3   coupled with the court's obligation to construe causation broadly, establishes an inference that

4   Fleming was removed in retaliation for reporting discriminatory conduct.  *Cf. Yartzoff*, 809 F.2d

5   at 1376.

6           Fleming has not, however, established a causal nexus over the nine month gap

7   between the time he reported discriminatory conduct, at the end of January, and his termination,

8   in early November.  *Villiarimo*, 281 F.3d at 1065 (citing with approval several cases from other

9   circuits in which periods between protected activity and adverse action ranging from four to eight

10  months were too long to establish a causal nexus without additional evidence).  This is especially

11  true in light of the fact that Dave Purcell agreed to give Fleming a raise and praised his work in an

12  email in April 2012, which was more than two months after Fleming reported the discrimination

13  to CalTrans.  (Purcell Decl. Ex. B, ECF No. 22.)

14          Fleming contends his deteriorating relationship with Dave Purcell, encapsulated in

15  a belligerent August 2012 phone call, demonstrates the required causal nexus.  (Pl.'s Opp'n to

16  Def.'s Mot. at 10, ECF No. 39.)  The substance of the August phone call, although vulgar and

17  demeaning, does not support a finding of retaliation.  Fleming must establish that but for his

18  report of discrimination, he would not have been terminated in later 2012.  *See Nassar*, 133 S. Ct.

19  at 2533.  Nothing in the phone call suggests this connection or allows any inference of retaliation.

20  Dave Purcell may have been unjustifiably angry and verbally explosive, but Fleming only

21  describes Dave Purcell's statements in the context of Fleming's performance as project manager.

22  (Perkins Decl. unmarked exhibits, ECF No. 41 at 44.)  According to Fleming's description of the

23  phone call, Dave Purcell brought up Fleming's removal from the jobsite only to the extent

24  Fleming complained about it, and not to say he, Dave Purcell, sought to retaliate for Fleming's

25  reporting discrimination, or even that he cared about the alleged discrimination.  (*Id.*)  Fleming, in

26  fact, testified that he did not believe Dave Purcell cared about his report of discriminatory

27  conduct.  (Dayton Decl. Ex. A, Fleming Dep. at 163:19–21, ECF No. 31.)  No evidence supports

28  /////

1  a causal chain between Fleming's January reports and November termination, and Fleming has

2  not established this third element of his prima facie case.

3  b)       Causal Link to October Protected Conduct

4  On the other hand, because only one month elapsed between October 4, 2012, and

5  Fleming's termination on November 5, 2012, Fleming has established his prima facie case for

6  purposes of this motion.

7  4.       Nondiscriminatory Motive and Pretext

8  Once a plaintiff establishes a prima facie case under Title VII, the burden shifts to

9  the defendant to provide evidence of a non-retaliatory motive. *Manatt*, 339 F.3d at 800. If a

10  legitimate reason for the adverse action is established, the burden switches back to the plaintiff to

11  provide specific evidence that the legitimate reason is mere pretext. *Stegall*, 350 F.3d at 1066.

12  In the first instance, Fleming's transfer in early 2012, Purcell Painting contends its

13  contract with SMCC required it to comply with SMCC's request to remove Fleming from the

14  jobsite. (Def.'s Corrected Mot. Summ. J. at 15–16, ECF No. 29.) Fleming offers no evidence to

15  show Purcell Painting's pointing to the contract is pretextual, and only submits that a clause in a

16  private contract should not permit illegal retaliation. (Pl.'s Opp'n to Def.'s Mot. at 11, ECF No.

17  39.) That said, an employer who argues it has no choice but to transfer an employee at the

18  demand of a third party has not necessarily provided evidence of a non-retaliatory motive.

19  *Tamosaitis*, 771 F.3d at 552-53 (citing *Gerdom v. Cont'l Airlines, Inc.*, 692 F.2d 602, 609 (9th

20  Cir. 1982) and *Fernandez v. Wynn Oil Co.*, 653 F.2d 1273, 1276-77 (9th Cir. 1981)). Purcell

21  Painting's contract with SMCC allowed SMCC to remove a Purcell Painting employee if SMCC

22  "determine[d] that [Purcell Painting] or any persons under employ of [Purcell Painting] are

23  conducting themselves in a manner deemed to be unacceptable to the operations of the Project

24  . . . ." (Def.'s Corrected Mot. Summ. J. 10:1–4, ECF No. 29.) A reasonable trier of fact could

25  conclude that a purely retaliatory demand to remove Fleming does not fall within this definition,

26  and that reporting discrimination is not "unacceptable to the operation" of the Three Bridges

27  Project. *See also Tamosaitis*, 771 F.3d at 553–54. Thus Purcell Painting has not met its burden

28  to show a legitimate motive, and summary judgment cannot be granted on this claim.

1    In the second instance, Fleming's termination in late 2012, Purcell Painting

2 contends it closed its Vancouver office and terminated Fleming following the resignation of Ben

3 Bear, its office manager, and not to retaliate against Fleming.  (Def.'s Corrected Mot. Summ. J. at

4 16, ECF No. 29.)  At the October 10, 2014, hearing on this motion, Fleming's attorney conceded

5 Fleming's demand letter reached Purcell after Purcell Painting formulated an intent to close its

6 Vancouver office, where Fleming worked at the time.  Thus it is undisputed Purcell Painting

7 intended to close the Vancouver office because the office manager, Ben Bear, resigned, not

8 because of a lawsuit.  (Dayton Decl. Ex. T, ECF No. 31-1 (email from Purcell Painting's CFO to

9 Purcell Painting's attorney asking attorney about getting out of Vancouver office lease).)

10 Fleming has offered no direct or specific evidence these explanations are pretext.  The October

11 demand letter arrived after Purcell Painting had decided to close the office.  And as discussed

12 above, Fleming's August phone call with Dave Purcell shows only that the two had a poor

13 working relationship, that Dave Purcell was not satisfied with Fleming's performance, and that

14 Purcell believed Fleming used his transfer as an excuse for poor performance.  Because Fleming

15 did not provide any specific evidence that his removal was mere pretext, his case for retaliation,

16 whether based on the January reports or the October demand letter, does not meet the

17 requirements of Title VII.  *Stegall*, 350 F.3d at 1066.  Summary judgment must be granted on this

18 claim.

19    5.  <u>Summary</u>

20    There are genuine disputes of material fact as to whether (1) Fleming engaged in

21 protected conduct by reporting Bruckewicz's conduct to CalTrans, (2) his transfer was an adverse

22 employment action, (3) Fleming's opposition was the cause of his transfer, and (4) whether

23 Purcell Painting had a legitimate motivation to transfer Fleming.  Purcell Painting's motion is

24 denied as to the Title VII claim related to Fleming's January 2012 reports of discrimination and

25 his removal from California.  Fleming has not established a causal link between his January

26 reports and his later termination, however, and he has not put forward specific and substantial

27 evidence that Purcell Painting's explanation of its legitimate motives to close the Vancouver

28 /////

1  office were mere pretext.  Purcell Painting's motion for summary judgment on the Title VII claim

2  must be granted as to these claims.

3        B.      FEHA

4              California courts generally look to the federal courts' interpretation of Title VII for

5  guidance when interpreting the FEHA.  *See Kohler v. Inter-Tel Technologies*, 244 F.3d 1167,

6  1172 (9th Cir. 2001) (collecting California authorities).  "Lawsuits claiming retaliatory

7  employment termination in violation of FEHA are analogous to federal Title VII claims."  *Flait v.*

8  *North American Watch Corp.*, 3 Cal. App. 4th 467, 475 (1992).  An analysis under the FEHA

9  therefore mirrors that described above under Title VII.  Purcell Painting's motion for summary

10  judgment is granted and denied to the same extent.

11        C.      California Labor Code Section 1102.5

12              As a preliminary matter, Fleming did not specify in his pleadings which subsection

13  of California Labor Code section 1102.5 Purcell Painting allegedly violated.  (Pl.'s Opp'n to

14  Def.'s Mot. at 7, ECF No. 39; Pl.'s Compl. ¶ 34, ECF No. 1.)  At the hearing, Fleming conceded

15  subsection (a) was inapplicable.  To the extent Fleming alleges a violation of section 1102.5(a),

16  the court grants summary judgment.

17              California Labor Code section 1102.5(b) provides, "An employer . . . shall not

18  retaliate against an employee for disclosing information . . . to a government or law enforcement

19  agency . . .  if the employee has reasonable cause to believe that the information discloses a

20  violation of state or federal statute . . . ."  Section 1102.5(b) should be construed consistently with

21  its broad purpose of "encouraging workplace whistle-blowers to report unlawful acts without

22  fearing retaliation."  *McVeigh v. Recology San Francisco*, 213 Cal. App. 4th 443, 468, 471

23  (2013).

24              California courts require section 1102.5(b) plaintiffs to satisfy the same three

25  elements as Title VII plaintiffs: the plaintiff must show he or she (1) engaged in a protected

26  activity, (2) suffered an adverse employment action, and (3) show a causal link between the

27  protected activity and adverse action.  *Jadwin v. County of Kern*, 610 F. Supp. 2d 1129, 1152

28  (E.D. Cal. 2009) (citation omitted); *Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App.

1    4th 1378, 1384 (2005).  If a plaintiff establishes a prima facie case, a court also follows the same

2    burden-shifting process as in a Title VII case.  *Mokler v. County of Orange*, 157 Cal. App. 4th

3    121, 138 (2007).  The defendant must provide a legitimate reason for the adverse action, and the

4    plaintiff may rebut that showing with specific evidence that the justification was mere pretext.  *Id.*

5           An employee engages in protected activity under section 1102.5(b) when he or she

6    "discloses to a *governmental agency* reasonably based suspicions of illegal activity."  *Jadwin*,

7    610 F. Supp. 2d at 1153 (*citing Mokler*, 157 Cal. App. 4th at 138) (emphasis in *Jadwin*).  As a

8    threshold matter, the court finds that CalTrans is a government agency.  Plaintiff asserted this fact

9    in his opposition (Pl.'s Opp'n to Def.'s Mot. at 7, ECF No. 39), and defendant does not dispute it.

10   Whereas Title VII requires a plaintiff show he or she opposed an employer's unlawful

11   employment practice, section 1102.5 does not.  Section 1102.5(b) casts a wider net, protecting an

12   employee whenever the employee reports his or her employer's unlawful conduct, conduct of

13   third parties, and conduct of contractors.  *See McVeigh*, 213 Cal. App. 4th at 471.

14          Here, Fleming engaged in protected activity under section 1102.5(b) when he

15   reported unlawful discrimination to CalTrans.  This is all section 1102.5(b) requires.  *Jadwin*,

16   610 F. Supp. 2d at 1153.  The court is not persuaded otherwise by Purcell Painting's reference to

17   the *Patten v. Grant Union High School District*, 134 Cal. App. 4th 1378, 1384 (2005).  In *Patten*,

18   the school principal reported complaints of inappropriate conduct by teachers to the school

19   district's administration.  *Id.* at 1382, 84.  The court held this was not protected conduct because

20   "the disclosures indisputably encompassed only the context of internal personnel matters

21   involving a supervisor and her employee, rather than the disclosure of a legal violation." *Id.* at

22   1384–85.  Here, Fleming was not SMCC's employee, and Fleming reported discrimination to a

23   government agency, CalTrans, which was not his employer.  This is not a *Patten*-like case

24   involving mere "personnel matters" in which the plaintiff, defendant, and all the actors worked

25   for the same employer.

26          The court's analysis regarding the remaining portions of the prima facie case for

27   retaliation under section 1102.5(b) mirrors the Title VII analysis above.  However, because

28   Fleming's report to CalTrans satisfies only section 1102.5(b)'s requirements for protected

1    activity, Fleming may proceed only on claims arising from that report, and only with regard to his

2    transfer.

3         D.       Termination in Violation of Public Policy

4              "[W]hen an employer's discharge of an employee violates fundamental principles

5    of public policy, the discharged employee may maintain a tort action and recover damages

6    traditionally available in such actions." *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 170 (1980).

7    The elements of a prima facie case of termination in violation of public policy are (1) an

8    employer-employee relationship, (2) a termination or other adverse employment action, (3) the

9    termination's violation of public policy, (4) a legal causal relationship between the adverse action

10   and the plaintiff's damages, and (5) damages of sufficient nature and extent. *Scott v. Solano*

11   *Cnty. Health & Soc. Servs. Dep't*, 459 F. Supp. 2d 959, 967 (E.D. Cal. 2006) (citing *Holmes v.*

12   *General Dynamics Corp.*, 17 Cal. App. 4th. 1418, 1426 (1993)).  The policy in question "must

13   involve a matter that affects society at large rather than a purely personal or proprietary interest of

14   the plaintiff or employer." *Gilmore v. Union Pac. R. Co.*, 857 F. Supp. 2d 985, 986 (E.D. Cal.

15   2012), *recons. denied in part*, No. 09-2180, 2012 WL 3205233 (E.D. Cal. Aug. 2, 2012),

16   *overruled on other grounds by Green v. Ralee Eng. Co.*, 19 Cal. 4th 66, 80 n.6 (1998).  The

17   policy underlying a discharge claim may be based in federal statutory or administrative law.

18   *Green*, 19 Cal. 4th at 87–88.

19              As in a Title VII case, a plaintiff alleging wrongful termination in violation of

20   public policy must establish his prima facie case by showing "(1) he or she engaged in a

21   'protected activity,' (2) the employer subjected the employee to an adverse employment action,

22   and (3) a causal link existed between the protected activity and the employer's action." *Miller v.*

23   *AmeriGas Partners, L.P.*, No. 12-2974, 2014 WL 1096705, at *6 (E.D. Cal. Mar. 19, 2014)

24   (citations and internal quotation marks omitted), *recons. denied*, 2014 WL 3362368 (July 8,

25   2014).  Similarly, "[w]hen a plaintiff alleges retaliatory employment termination . . . as a claim

26   for wrongful employment termination in violation of public policy, and the defendant seeks

27   summary judgment, California follows the burden shifting analysis of *McDonnell Douglas Corp*

28   /////

1   *v. Green* to determine whether there are triable issues of fact for resolution by a jury." *Loggins*,

2   151 Cal. App. 4th at 1108-09 (citation omitted).

3          "Wrongful termination cases typically arise when an employer retaliates against an

4   employee for refusing to violate a statute, . . . [for] exercising a statutory right, or [for] reporting

5   an alleged violation of a statute of public importance." *Gould v. Maryland Sound Indus., Inc.*,

6   31 Cal. App. 4th 1137, 1147 (1995), *as modified* (Feb. 9, 1995). There is no question a

7   termination in retaliation for reporting discriminatory conduct violates public policy. *Garcia v.*

8   *Rockwell Internat. Corp.*, 187 Cal. App. 3d 1556, 1561 (1986), *abrogated on other grounds by*

9   *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083 (1992).

10         Here, Purcell Painting concedes Fleming was terminated. (Def.'s Corrected Mot.

11  Summ. J. at 17–18, ECF No. 29.) Purcell Painting does not address the existence of an employer-

12  employee relationship between itself and Fleming, whether the termination in November was the

13  legal cause of Fleming's damages, or the nature and extent of Fleming's damages from his

14  November termination. (*Id.*) But because Fleming has not established his report of

15  discriminatory conduct or demand letter caused his termination, and because he has not offered

16  sufficient evidence of pretext, the court grants Purcell Painting's motion for summary judgment

17  as to this claim.

18         E.      Intentional Infliction of Emotional Distress

19         The elements of a claim for intentional infliction of emotional distress are:

20  "(1) extreme and outrageous conduct by the defendant with the intent of causing, or reckless

21  disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or

22  extreme emotional distress; and (3) actual and proximate causation of the emotional distress by

23  the defendant's outrageous conduct." *Wynes v. Kaiser Permanente Hospitals*, 936 F. Supp. 2d

24  1171, 1194 (E.D. Cal. 2013) (citing *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991)).

25  The employer's conduct must be more than "mere profanity, obscenity, or abuse, without

26  circumstances of aggravation . . . ." *Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1128

27  (1989). The conduct must normally be so extreme and outrageous as to go "beyond all possible

28  bonds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

1  community." *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 499 n.5 (1970) (quoting Restatement

2  (Second) of Torts § 46 com. d (1965)).   Moreover, "even where improper motivation underlies

3  personnel management decisions, the remedy is not in an IIED claim, but in a suit against the

4  employer for discrimination." *Wynes*, 936 F. Supp. 2d at 1194.

5         Here, Fleming has not pointed to any evidence beyond Dave Purcell's insults and

6  indignities on one noted occasion.  He has not offered any evidence of Purcell Painting's

7  "outrageous conduct beyond the bounds of human decency," *Alcorn*, 2 Cal. 3d at 499 n.5, no

8  evidence he suffered extreme emotional distress, and no evidence Purcell Painting's conduct

9  caused his distress.  The motion for summary judgment as to this claim is also granted.

10 V.     <u>CONCLUSION</u>

11        For the foregoing reasons, the court GRANTS Purcell Painting's motion for

12 summary judgment in part and DENIES it in part:

13        (1) Purcell Painting's motion is DENIED as to the Title VII, FEHA, and section

14 1102.5(b) claims arising from Fleming's January 2012 reports of discrimination and his transfer

15 from the Three Bridges Project; and

16        (2) Purcell Painting's motion is GRANTED as to all other claims.

17        IT IS SO ORDERED.

18 DATED:  December 29, 2014.

19

20                                        _____
                                         UNITED STATES DISTRICT JUDGE
21

22

23

24

25

26

27

28